A-2

DATE FILED: August 30, 2023 1:59 PM
FILING ID: 4B36FEFEF4E12
CASE NUMBER: 2023CV32525

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | |
| **Plaintiffs:**<br><br>REGAN BENSON<br><br>v.<br><br>**Defendants:**<br><br>RON THOMAS, in his individual and official capacities;<br>MARK FLEECS, in his individual and official capacities. | ▲COURT USE ONLY▲<br>_____<br>Case No.<br>Division |
| <u>Plaintiff's Counsel</u><br>Andrew McNulty, #50546<br>Mari Newman, #30192<br>KILLMER, LANE AND NEWMAN, LLP<br>1543 Champa St., Ste. 400<br>Denver, CO 80202<br>Phone: (303) 571-1000<br>Facsimile: (303) 571-1001<br>amcnulty@kln-law.com | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, by and through her counsel, Andy McNulty and Mari Newman of KILLMER, LANE & NEWMAN, LLP, hereby submits her Complaint and Jury Demand, and states as follows:

**INTRODUCTION**

1.      Ms. Benson is a passionate advocate for Denver's houseless community who operates a nonprofit in south Denver, Helping Hands for Dignity. Every day, Ms. Benson helps our houseless neighbors navigate a new crisis. More and more often, the crises faced by her clients are caused by the actions of Denver Police Department ("DPD") officers during homeless

sweeps.[1] Because of this, Ms. Benson began attending Citizen's Advisory Board ("CAB") meetings in the summer of 2021 for the DPD District where she serves the houseless community. Ms. Benson attended these virtual meetings[2] to hear what DPD command staff was telling the community about their actions, and to hopefully have a healthy discussion with command staff about the actions of low-level officers that she viewed as counterproductive to helping our houseless neighbors get off the streets.

2.      Ms. Benson attended a few virtual CAB meetings where she mostly listened and nominally participated in the text-based chatroom. Then, in September of 2021, Ms. Benson attended a CAB meeting and decided to engage with the command staff, and community members in attendance, about DPD's treatment of houseless individuals. Ms. Benson waited until the open forum portion of the meeting, virtually raised her hand, and spoke calmly (but passionately) about what she sees on the streets every day. In response, a high-ranking DPD Division Chief, Defendant Ron Thomas, began questioning and challenging Ms. Benson. Ms. Benson answered Defendant Thomas' questions and had, what she believed to be, a productive discussion about how DPD could change its focus from criminalizing houseless individual to providing them with much needed resources.

---

[1] A sweep is a multi-agency effort by government officials in Denver to displace homeless residents and seize, and destroy, their property. DPD officers act as security at the sweeps. *See* Conor McCormick-Cavanaugh, *Coming Clean About The Homeless Sweeps In Denver*, WESTWORD, available at:
https://www.westword.com/news/denvers-mayor-hates-the-word-sweeps-denvers-homeless-hate-sweeps-more-11889601.
[2] Because of the COVID-19 pandemic, these meetings were being held virtually during 2021 and 2022. Since then, the meetings have been held in person.

3.      When Ms. Benson tried to attend the next month's meeting virtually, she was refused entry by a DPD commander, Defendant Mark Fleecs. After the meeting, Ms. Benson emailed Defendant Fleecs to ask why she was denied entry. Defendant Fleecs stated that Ms. Benson's comments, which were critical of the DPD response to homelessness, had been disruptive and that she would be banned from all future meetings because of her comments. Ms. Benson responded to the email and asked to be allowed to continue to attend meetings, but Defendant Fleecs reiterated that Ms. Benson was banned from future meetings.

4.      In compliance with Defendants' ban on her attendance, as communicated by Defendant Fleecs, Ms. Benson has not attended another CAB meeting for fear of being arrested. She wishes to be able to attend these meetings to both hear what DPD command staff has to say about its objectives with respect to homelessness and to engage with DPD command staff and community members about DPD's actions toward houseless individuals in South Denver. She brings this lawsuit to vindicate her rights and to gain access to future CAB meetings.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under Colo. Rev. Stat. § 13-1-124(b).

6.      Venue is proper under C.R.C.P. 98(c)(5).

7.      Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by C.R.S. § 13-21-131.

## PARTIES

8.      At all times relevant to this Complaint, Plaintiff Regan Benson was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

9.     At all times relevant to this Complaint, Defendant Ron Thomas was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Thomas was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Thomas is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

10.     At all times relevant to this Complaint, Defendant Mark Fleecs was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Fleecs was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Fleecs is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

## FACTUAL ALLEGATIONS

11.     Ms. Benson is a vocal advocate for homelessness rights in Denver. She runs her own nonprofit organization, Helping Hands For Dignity, that provides support for houseless individuals in the southern portion of Denver. Ms. Benson helps houseless individuals in various ways and meets the people she serves where they are. She is consistently out in South Denver speaking with houseless individuals, ensuring that they make important appointments, working with them to obtain housing, helping them clear warrants, and trying to get their possessions back when they are seized by the police. Because of the police misconduct she has seen in the treatment of houseless individuals, she is a passionate advocate for not only the houseless, but also for police reform. She vocally advocates against homeless sweeps and the criminalization of

4

poverty. Because of her advocacy, DPD officers, and particularly DPD officers in DPD District Four, know her by name.

12.    Ms. Benson's advocacy in District Four led her to begin attending District Four's Citizen's Advisory Board (CAB) meetings during the COVID-19 pandemic. CAB meetings are designed by DPD to inform the community and gather their input on DPD priorities. During CAB meetings, DPD command staff from each District provide statistics for the entire district. The CAB meetings are also specifically designed to allow community members to ask command staff any question they would like. The CAB meetings are open to the public without restriction. DPD advertises the CAB meetings as a great opportunity for community members to meet DPD officers while being able to ask them questions.

13.    DPD's District Four holds its CAB meetings on the second Wednesday of each month. During the COVID-19 pandemic, these meetings were held virtually on the Microsoft Teams platform. Denver City Councilmember Kevin Flynn regularly attended these meetings.

14.    Ms. Benson attended the virtual District Four CAB meetings in July and August of 2021. During those meetings, Ms. Benson listened respectfully to DPD command staff talk about their activities in the neighborhood where she advocated on behalf of the houseless. Ms. Benson heard the command staff give a far different account of how DPD officers were policing houseless individuals than she had observed and had been experienced by her clients. Based on Ms. Benson's observations and her clients' experiences, DPD officers routinely illegally seized and discarded houseless individuals' property, bullied them with threats of enforcement of Denver's camping ban, entered their tents without a warrant, and initiated the towing of the recreation vehicles that they used as homes without the proper process or authority. Despite this,

Ms. Benson sat quietly and did not speak during either of these meetings. She did, however, participate in the virtual text-based chat without incident.

15.     On September 8, 2021, Ms. Benson again attended the virtual District Four CAB meeting. Prior to the meeting, she announced on her YouTube channel, which she uses to spread the message about the work of her nonprofit and to highlight the treatment of houseless individuals in Denver, that she would be attending the virtual meeting. Ms. Benson indicated in that video that she was critical of the DPD response to homelessness and, if prompted during the meeting, would likely share her factual criticisms. Upon information and belief, Defendant Ron Thomas was alerted to the video that Ms. Benson posted on YouTube signaling that she would attend the virtual meeting on September 8, 2021.

16.     The meeting District Four CAB on September 8, 2021, was very informal. DPD officers gave presentations on various topics. City Councilmember Flynn was in attendance as were Defendants Thomas and Mark Fleecs. Defendant Fleecs regularly attends District Four CAB meetings, but Ms. Benson was surprised to see Defendant Thomas in attendance. Defendant Thomas had not attended any of the prior virtual meetings.

17.     Defendant Thomas attended the virtual meeting because he knew that Ms. Benson would be attendance based on the YouTube video she posted and that she would be critical of DPD. Defendant Thomas was at the meeting to shut Ms. Benson down and with the premeditated purpose of retaliating against her if she spoke out critically about DPD's response to homelessness.

18.     During the meeting, many members of the community interjected to ask questions and make comments. One person asked questions and spoke about crime statistics. Another

6

person made comments about being tired of seeing guns on the streets. These community members did not raise their hands and, instead, simply spoke up with their questions and comments. DPD command staff, including Defendants Thomas and Fleecs, listened to these individuals and, upon information and belief, never took any action to ban them from future meetings.

19.     At the end of the meeting, DPD command staff took questions from the audience on any topic that the audience member wanted to discuss. Ms. Benson clicked the button to virtually raise her hand during this portion of the meeting and waited to be called on.

20.     DPD command staff called on Ms. Benson and she began to speak. Ms. Benson's comments focused on how Denver's response to homelessness has been a failure. She spoke about how, in particular, DPD's District Four was focused on criminalizing houseless individuals rather than providing resources. Ms. Benson spoke about her experiences serving homeless encampments and that she regularly witnessed the seizure and destruction of houseless individuals' property, which she considered cruel and unhelpful to the mission of ending homelessness. Ms. Benson passionately advocated but did not yell or use profanity. Other community members also engaged in the discussion that Ms. Benson had sparked, and Ms. Benson felt as though an important dialogue was had about how Denver and the DPD treats houseless residents.

21.     Defendant Thomas seemed to take umbrage at Ms. Benson's comments and began directly challenging her. Ms. Benson calmly answered Defendant Thomas' questions. It was Ms. Benson's observation that Defendant Thomas did not know what was going on with District Four's response to homelessness because he had not been attending the encampment sweeps in

the District, and she told him as much. Ms. Benson felt as though the discussion with Defendant Thomas was civil and important. She appreciated the opportunity to directly speak with DPD command staff about the issues that she was seeing every day as an advocate for houseless individuals.

22.     On October 13, 2021, Ms. Benson attempted to attend the virtual District Four CAB meeting. When Ms. Benson attempted to enter the virtual meeting, she was denied entry by Defendant Fleecs.

23.     The next day, Ms. Benson emailed Defendant Fleecs and asked him why she had been banned from the meeting. Defendant Fleecs told Ms. Benson that she was banned because she began a debate regarding homeless encampments and police involvement (including using the terms "sweeps" to describe police action relating to encampments) during the meeting on September 8, 2021. Defendant Fleecs wrongly labeled Ms. Benson's comments, which were merely critical of the DPD responses to homelessness, as disrespectful and inappropriate. Defendant Fleecs then informed Ms. Benson that she was banned from participation in all future CAB meetings.

24.     Ms. Benson sent Defendant Fleecs a follow-up email asking him to reconsider and telling him that banning her from continuing to attend meetings violated her free speech rights. Defendant Fleecs responded in a cursory and curt email that Ms. Benson would continue to be banned from attending CAB meetings.

25.     Ms. Benson was banned from attending CAB meetings because of her viewpoint. If Ms. Benson had been praising the DPD response to homelessness, she would not have been banned from attending CAB meetings.

26.    It was clear to Ms. Benson that Defendant Fleecs and Defendant Thomas conspired together to ban her from future meetings because she spoke out against DPD's current approach to homelessness. Defendant Thomas' tenor during the meeting made clear to her that he was upset by her comments and Defendant Fleecs' email told Ms. Benson that he would not allow criticism of the DPD at CAB meetings.

27.    Since being informed by Defendant Fleecs, on October 14, 2021, that she was banned from CAB meetings, Ms. Benson has not attended another CAB meeting. Ms. Benson fears that, should she attend a future CAB meeting, she will be arrested by DPD officers.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF[3]
### C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 10
### Freedom of Speech

28.    Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

29.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as law enforcement officers at all times relevant to the allegations in this Complaint.

30.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

31.    The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish

---

[3] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10.

32.    The free speech rights protected by Colo. Const. Art. II, Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

33.    Plaintiff were engaged in protected speech.

34.    Plaintiff's speech was on a matter of public concern and did not violate any law.

35.    Defendants' conduct would chill a person of ordinary firmness from exercising his or her free speech rights.

36.    Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

37.    Plaintiff's speech occurred at a public forum.

38.    Defendants imposed a prior restraint on Plaintiff's speech by banning her.

39.    Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

40.    Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

**SECOND CLAIM FOR RELIEF[4]**
**C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 24**
**Right to Petition**

---

[4] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

41.     Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

42.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as law enforcement officers at all times relevant to the allegations in this Complaint.

43.     Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

44.     The Petitioning Clause to the Colorado Constitution provides that "[t]he people have the right peaceably to assemble for the common good, and to apply to those invested with the powers of government for redress of grievances, by petition or remonstrance." Colo. Const. Art. II, Section 24.

45.     Plaintiff was engaged in protected petitioning activity.

46.     Plaintiff's petitioning activity was on a matter of public concern and did not violate any law.

47.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her petitioning rights.

48.     Defendants' conduct chilled Plaintiff from exercising her petitioning rights.

49.     Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's petitioning activity.

50.     Plaintiff's petitioning activity occurred at a public forum.

51.     Defendants imposed a prior restraint on Plaintiff's petitioning activity by banning her.

52.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

53.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

### THIRD CLAIM FOR RELIEF[5]
### C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 10 & 24
### Freedom of Speech and Petitioning – Retaliation

54.     Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

55.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as a law enforcement officer at all times relevant to the allegations in this Complaint.

56.     Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

57.     Plaintiff was engaged in protected speech and petitioning activity.

58.     Plaintiff's speech and petitioning activity was on a matter of public concern and did not violate any law.

59.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her free speech and petitioning rights.

60.     Defendants' conduct chilled Plaintiff from exercising her petitioning rights.

---

[5] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

61.    Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech and petitioning activity.

62.    Plaintiff's speech and petitioning activity occurred at a public forum.

63.    Defendants responded to Plaintiff's protected speech and petitioning activity with retaliation.

64.    Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her free speech and petitioning rights.

65.    Defendants sought to punish Plaintiff for exercising her free speech and petitioning rights, to silence her future speech and petitioning, to stop her from continuing to speak and petition, and to restrict her freedom of expression, along with the future speech, petitioning, and expression of others.

66.    Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in protected free speech activity.

67.    Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

68.    Defendants' action and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.    All appropriate relief at law and equity;

    b.   Declaratory relief;

    c.   Injunctive relief, including but not limited to:

        1.   An order that requires Defendants to allow Ms. Benson to attend future CAB meetings.

    d.   Actual economic damages as established at trial;

    e.   Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

    f.   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

    g.   Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

        1.   Issuance of a formal written apology from each Defendant to Plaintiff;

        2.   The imposition of policy changes designed to avoid future similar misconduct by Defendants;

        3.   Mandatory training designed to avoid future similar misconduct by Defendants;

    h.   Pre-judgment and post-judgment interest at the highest lawful rate;

    i.   Attorney's fees and costs; and

    j.   Such further relief as justice requires.

## **REQUEST FOR TRIAL BY JURY**

Plaintiff demands a jury trial on all issues so triable.

Dated this 30th day of August 2023.

<div style="margin-left: 50%;">

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*
_____
Andy McNulty
Mari Newman
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF

</div>