# A-25

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: January 19, 2024 3:25 PM<br>FILING ID: E92CB2C58B976<br>CASE NUMBER: 2023CV32525 |

| | |
|---|---|
| **Plaintiffs:**<br><br>REGAN BENSON<br><br>v.<br><br>**Defendants:**<br><br>RON THOMAS, in his individual and official capacities;<br>MARK FLEECS, in his individual and official capacities;<br>JASON ANDERSON, in his individual and official capacities;<br>JERAMI CHAVEZ, in his individual and official capacities;<br>JIMMY MARTINEZ, in his individual and official capacities;<br>KRISTIN GEORGE, in her individual and official capacities. | ▲COURT USE ONLY▲<br>───────────<br>Case No. 2023CV32525<br>Division |
| **Plaintiff's Counsel**<br>Mari Newman, #30192<br>Andy McNulty, #50546<br>NEWMAN \| MCNULTY<br>1490 N. Lafayette Street, Suite 304<br>Denver, Colorado 80218<br>andy@newman-mcnulty.com<br>mari@newman-mcnulty.com<br>720-850-5770 | |

| |
|---|
| **AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, by and through her counsel, Andy McNulty and Mari Newman of NEWMAN \| MCNULTY, hereby submits her Amended Complaint and Jury Demand, and states as follows:

## INTRODUCTION

1.      Ms. Benson is a passionate advocate for Denver's houseless community who operates a nonprofit in south Denver, Helping Hands for Dignity. Every day, Ms. Benson helps our houseless neighbors navigate a new crisis. More and more often, the crises faced by her

clients are caused by the actions of Denver Police Department ("DPD") officers during homeless sweeps.[1] Because of this, Ms. Benson began attending Citizen's Advisory Board ("CAB") meetings in the summer of 2021 for the DPD District where she serves the houseless community. Ms. Benson attended these virtual meetings[2] to hear what DPD command staff was telling the community about their actions, and to hopefully have a healthy discussion with command staff about the actions of low-level officers that she viewed as counterproductive to helping our houseless neighbors get off the streets.

2.     Ms. Benson attended a few virtual CAB meetings where she mostly listened and nominally participated in the text-based chatroom. Then, in September of 2021, Ms. Benson attended a CAB meeting and decided to engage with the command staff, and community members in attendance, about DPD's treatment of houseless individuals. Ms. Benson waited until the open forum portion of the meeting, virtually raised her hand, and spoke calmly (but passionately) about what she sees on the streets every day. In response, a high-ranking DPD Division Chief, Defendant Ron Thomas, began questioning and challenging Ms. Benson. Ms. Benson answered Defendant Thomas' questions and had, what she believed to be, a productive discussion about how DPD could change its focus from criminalizing houseless individual to providing them with much needed resources. Other community members were also present in the

---

[1] A sweep is a multi-agency effort by government officials in Denver to displace homeless residents and seize, and destroy, their property. DPD officers act as security at the sweeps. *See* Conor McCormick-Cavanaugh, *Coming Clean About The Homeless Sweeps In Denver*, WESTWORD, available at:
https://www.westword.com/news/denvers-mayor-hates-the-word-sweeps-denvers-homeless-hate-sweeps-more-11889601.
[2] Because of the COVID-19 pandemic, these meetings were being held virtually during 2021 and 2022. Since then, the meetings have been held in person.

meeting and made comments in the virtual chat that were supportive of Ms. Benson and her comments.

3.      Unbeknownst to Ms. Benson, after the meeting, multiple members of the DPD command staff, including Defendants Jason Anderson, Jimmy Martinez, and Jerami Chavez, and a Denver City Attorney, Defendant Kristin George, conspired with a DPD commander, Defendant Mark Fleecs, to retaliate against her for asking critical, yet respectful, questions of Defendant Thomas at the meeting and her comments that they viewed as anti-law enforcement. All of these Defendants decided to ban Ms. Benson from future meetings because of her allegedly anti-law enforcement views that were critical of the DPD response to homelessness, and her perceived affiliation with others at the meeting who expressed sentiments that were critical of law enforcement.

4.      When Ms. Benson tried to attend the next month's meeting virtually, she was refused entry by Defendant Fleecs. After the meeting, Ms. Benson emailed Defendant Fleecs to ask why she was denied entry. Defendant Fleecs stated that Ms. Benson's comments, which were critical of the DPD response to homelessness, had been disruptive and that she would be banned from all future meetings because of her comments. Ms. Benson responded to the email and asked to be allowed to continue to attend meetings, but Defendant Fleecs reiterated that Ms. Benson was banned from future meetings.

5.      In compliance with Defendants' ban on her attendance, as communicated by Defendant Fleecs, Ms. Benson has not attended another CAB meeting for fear of being arrested. She wishes to be able to attend these meetings to both hear what DPD command staff has to say about its objectives with respect to homelessness and to engage with DPD command staff and

community members about DPD's actions toward houseless individuals in South Denver. She brings this lawsuit to vindicate her rights and to gain access to future CAB meetings.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under Colo. Rev. Stat. § 13-1-124(b).

7.      Venue is proper under C.R.C.P. 98(c)(5).

8.      Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by C.R.S. § 13-21-131 and 42 U.S.C. § 1988.

## PARTIES

9.      At all times relevant to this Amended Complaint, Plaintiff Regan Benson was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

10.     At all times relevant to this Amended Complaint, Defendant Ron Thomas was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Thomas was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Thomas is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

11.     At all times relevant to this Amended Complaint, Defendant Mark Fleecs was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Fleecs was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Fleecs is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

12.     At all times relevant to this Amended Complaint, Defendant Jason Anderson was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Anderson was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Anderson is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

13.     At all times relevant to this Amended Complaint, Defendant Jerami Chavez was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Chavez was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Chavez is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

14.     At all times relevant to this Amended Complaint, Defendant Jimmy Martinez was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant Martinez was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for DPD. Defendant Martinez is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

15.     At all times relevant to this Amended Complaint, Defendant Kristin George was a citizen of the United States and resident of and domiciled in the State of Colorado. At all relevant times, Defendant George was acting within the scope of her official duties and employment and under color of state law in her capacity as City Attorney for Denver.

**FACTUAL ALLEGATIONS**

16.     Ms. Benson is a vocal advocate for homelessness rights in Denver. She runs her own nonprofit organization, Helping Hands For Dignity, that provides support for houseless individuals in the southern portion of Denver. Ms. Benson helps houseless individuals in various ways and meets the people she serves where they are. She is consistently out in South Denver speaking with houseless individuals, ensuring that they make important appointments, working with them to obtain housing, helping them clear warrants, and trying to get their possessions back when they are seized by the police. Because of the police misconduct she has seen in the treatment of houseless individuals, she is a passionate advocate for not only the houseless, but also for police reform. She vocally advocates against homeless sweeps and the criminalization of poverty. Because of her advocacy, DPD officers, and particularly DPD officers in DPD District Four, know her by name.

17.     Ms. Benson's advocacy in District Four led her to begin attending District Four's Citizen's Advisory Board (CAB) meetings during the COVID-19 pandemic. CAB meetings are designed by DPD to inform the community and gather their input on DPD priorities. During CAB meetings, DPD command staff from each District provide statistics for the entire district. The CAB meetings are also specifically designed to allow community members to ask command staff any question they would like. The CAB meetings are open to the public without restriction. DPD advertises the CAB meetings as a great opportunity for community members to meet  DPD officers while being able to ask them questions.

18.     DPD's District Four typically holds its CAB meetings on the second Wednesday of each month. During the COVID-19 pandemic, these meetings were held virtually on the

Microsoft Teams platform. Denver City Councilmember Kevin Flynn regularly attended these meetings.

19.    Ms. Benson attended the virtual District Four CAB meetings in July and August of 2021. During those meetings, Ms. Benson listened respectfully to DPD command staff talk about their activities in the neighborhood where she advocated on behalf of the houseless. Ms. Benson heard the command staff give a far different account of how DPD officers were policing houseless individuals than she had observed and had been experienced by her clients. Based on Ms. Benson's observations and her clients' experiences, DPD officers routinely illegally seized and discarded houseless individuals' property, bullied them with threats of enforcement of Denver's camping ban, entered their tents without a warrant, and initiated the towing of the recreation vehicles that they used as homes without the proper process or authority. Despite this, Ms. Benson sat quietly and did not speak during either of these meetings. She did, however, participate in the virtual text-based chat without incident.

20.    On September 8, 2021, Ms. Benson again attended the virtual District Four CAB meeting. Prior to the meeting, she announced on her YouTube channel, which she uses to spread the message about the work of her nonprofit and to highlight the treatment of houseless individuals in Denver, that she would be attending the virtual meeting. Ms. Benson indicated in that video that she was critical of the DPD response to homelessness and, if prompted during the meeting, would likely share her factual criticisms. Upon information and belief, Defendant Ron Thomas was alerted to the video that Ms. Benson posted on YouTube signaling that she would attend the virtual meeting on September 8, 2021.

21.     The meeting District Four CAB on September 8, 2021, was very informal. DPD officers gave presentations on various topics. City Councilmember Flynn was in attendance as were Defendants Thomas and Mark Fleecs. Defendant Fleecs regularly attends District Four CAB meetings, but Ms. Benson was surprised to see Defendant Thomas in attendance. Defendant Thomas had not attended any of the prior virtual meetings.

22.     Defendant Thomas attended the virtual meeting because he knew that Ms. Benson would be attendance based on the YouTube video she posted and that she would be critical of DPD. Defendant Thomas was at the meeting to shut Ms. Benson down and with the premeditated purpose of retaliating against her if she spoke out critically about DPD's response to homelessness.

23.     During the meeting, many members of the community interjected to ask questions and make comments. One person asked questions and spoke about crime statistics. Another person made comments about being tired of seeing guns on the streets. These community members did not raise their hands and, instead, simply spoke up with their questions and comments. DPD command staff, including Defendants Thomas and Fleecs, listened to these individuals and, upon information and belief, never took any action to ban them from future meetings.

24.     At the end of the meeting, DPD command staff took questions from the audience on any topic that the audience member wanted to discuss. Ms. Benson clicked the button to virtually raise her hand during this portion of the meeting and waited to be called on.

25.     DPD command staff called on Ms. Benson and she began to speak. Ms. Benson's comments focused on how Denver's response to homelessness has been a failure. She spoke

about how, in particular, DPD's District Four was focused on criminalizing houseless individuals rather than providing resources. Ms. Benson spoke about her experiences serving homeless encampments and that she regularly witnessed the seizure and destruction of houseless individuals' property, which she considered cruel and unhelpful to the mission of ending homelessness. Ms. Benson passionately advocated but did not yell or use profanity. Other community members also engaged in the discussion that Ms. Benson had sparked, and Ms. Benson felt as though an important dialogue was had about how Denver and the DPD treats houseless residents.

26.     Defendant Thomas seemed to take umbrage at Ms. Benson's comments and began directly challenging her. Ms. Benson calmly answered Defendant Thomas' questions. It was Ms. Benson's observation that Defendant Thomas did not know what was going on with District Four's response to homelessness because he had not been attending the encampment sweeps in District Four, and she told him as much. Ms. Benson felt as though the discussion with Defendant Thomas was civil and important. She appreciated the opportunity to directly speak with DPD command staff about the issues that she was seeing every day as an advocate for houseless individuals.

27.     Later on September 8, 2021, Defendant Thomas wrote an email to Defendants Martinez, Chavez, and Anderson that congratulated them for supposedly holding their own when, as Defendant Thomas characterized it, Ms. Benson allegedly hijacked the meeting. When Defendant Thomas stated in this email that Ms. Benson allegedly hijacked the meeting, he meant that her comments were critical of DPD. Defendant Thomas considered any critical comments to be disruptive and not welcome at CAB meetings. Defendant Martinez forwarded Defendant

Thomas' email to Defendant Fleecs and told Defendant Fleecs that he was concerned that Ms. Benson would, as Defendant Thomas stated, hijack future meetings. What Defendant Martinez meant by this was that he was concerned that Ms. Benson would be critical of DPD in future meetings, and he wanted to make sure she was banned from future meetings on this basis.

28.    On September 9, 2021, Defendants Martinez, Chavez, and Anderson each spoke with Defendant Fleecs. During these meetings, Defendants Martinez, Chavez, Anderson, and Fleecs conspired to ban Ms. Benson from all future CAB meetings based on the email from Defendant Thomas. Defendants Martinez, Chavez, Anderson, and Fleecs determined that what they perceived to be Ms. Benson's anti-law enforcement views were disruptive to the CAB meetings. During these conversations, Defendants discussed how Ms. Benson had previously been at homeless sweeps and was critical of law enforcement. They also discussed how Ms. Benson, during the meeting, asked several questions, and made some statements of personal opinion, about DPD's actions during the homeless sweeps. Defendants were offended by Ms. Benson's questions and comments reflecting her opinion that DPD should not be dealing with houseless individuals because police encounters do not help solve homelessness. They also determined that the others who had attended the CAB, and expressed what Defendants deemed to be anti-law enforcement views, were associated with Ms. Benson. Defendants Martinez, Chavez, Anderson, and Fleecs did not want individuals with anti-law enforcement views, or the view that DPD was exacerbating the problems of houseless individuals, to be able to attend future meetings. Because of that, they all determined that Ms. Benson should be banned from all future CAB meetings. In other words, Defendants determined that they should ban Ms. Benson based on the viewpoint of her speech.

29.     After speaking with Defendants Martinez, Chavez, and Anderson, Defendant Fleecs went to speak with Defendant George. Defendant Fleecs explained what had happened at the September 8, 2021, CAB meeting and relayed his conversations with Defendants Martinez, Chavez, and Anderson. After hearing all of this information, Defendant George told Defendant Fleecs that he could ban Ms. Benson from all future CAB meetings. Defendant George told Defendant Fleecs to ban Ms. Benson from all future CAB meetings despite the fact that she is a lawyer who has knowledge of the Colorado Constitution and its free speech protections. Defendant George told Defendant Fleecs to ban Ms. Benson from all future CAB meetings on the basis of the viewpoint of her speech.

30.     On October 13, 2021, Ms. Benson attempted to attend the virtual District Four CAB meeting. When Ms. Benson attempted to enter the virtual meeting, she was denied entry by Defendant Fleecs.

31.     The next day, October 14, 2021, Ms. Benson emailed Defendant Fleecs and asked him why she had been banned from the meeting. Defendant Fleecs told Ms. Benson that she was banned because she began a debate regarding homeless encampments and police involvement (including using the terms "sweeps" to describe police action relating to encampments) during the meeting on September 8, 2021. Defendant Fleecs wrongly labeled Ms. Benson's comments, which were merely critical of the DPD responses to homelessness, as disrespectful and inappropriate. Defendant Fleecs then informed Ms. Benson that she was banned from participation in all future CAB meetings.

32.     Ms. Benson sent Defendant Fleecs a follow-up email asking him to reconsider and telling him that banning her from continuing to attend meetings violated her free speech

rights. Defendant Fleecs responded in a cursory and curt email that Ms. Benson would continue to be banned from attending CAB meetings.

33.    On October 14, 2021, Defendant Jason Anderson wrote an email to Defendant Mark Fleecs that outlined the content of their previous conversations and to

34.    Ms. Benson was banned from attending CAB meetings because of her viewpoint. If Ms. Benson had been praising the DPD response to homelessness, she would not have been banned from attending CAB meetings.

35.    All Defendants conspired together to ban Ms. Benson from future meetings because she spoke out against DPD's current approach to homelessness. Defendant Thomas' tenor during the meeting made clear to Ms. Benson that he was upset by her comments and Defendant Fleecs' email told Ms. Benson that Defendants would not allow criticism of the DPD at CAB meetings.

36.    Since being informed by Defendant Fleecs, on October 14, 2021, that she was banned from CAB meetings, Ms. Benson has not attended another CAB meeting. Ms. Benson fears that, should she attend a future CAB meeting, she will be arrested by DPD officers.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF[3]
### C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 10
### Freedom of Speech and Association
*Against Defendants Thomas, Fleecs, Anderson, Chavez, and Martinez*

37.    Plaintiff hereby incorporates all other paragraphs of this Amended Complaint as if fully set forth herein.

---

[3] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

38.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as law enforcement officers at all times relevant to the allegations in this Amended Complaint.

39.     Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

40.     The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10.

41.     The free speech rights protected by Colo. Const. Art. II, Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

42.     Plaintiff was engaged in protected speech and associative activity.

43.     Plaintiff's speech and association was on a matter of public concern and did not violate any law.

44.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her free speech and association rights.

45.     Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

46.     Plaintiff's speech and association occurred at a public forum.

47.     Defendants imposed a prior restraint on Plaintiff's speech and association by banning her.

48.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

49.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

### SECOND CLAIM FOR RELIEF[4]
### C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 24
### Right to Petition
*Against Defendants Thomas, Fleecs, Anderson, Chavez, and Martinez*

50.     Plaintiff hereby incorporates all other paragraphs of this Amended Complaint as if fully set forth herein.

51.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as law enforcement officers at all times relevant to the allegations in this Amended Complaint.

52.     Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

53.     The Petitioning Clause to the Colorado Constitution provides that "[t]he people have the right peaceably to assemble for the common good, and to apply to those invested with the powers of government for redress of grievances, by petition or remonstrance." Colo. Const. Art. II, Section 24.

54.     Plaintiff was engaged in protected petitioning activity.

55.     Plaintiff's petitioning activity was on a matter of public concern and did not violate any law.

---

[4] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

56.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her petitioning rights.

57.     Defendants' conduct chilled Plaintiff from exercising her petitioning rights.

58.     Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's petitioning activity.

59.     Plaintiff's petitioning activity occurred at a public forum.

60.     Defendants imposed a prior restraint on Plaintiff's petitioning activity by banning her.

61.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

62.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

### THIRD CLAIM FOR RELIEF[5]
### C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 10 & 24
### Freedom of Speech and Petitioning – Retaliation
*Against Defendants Thomas, Fleecs, Anderson, Chavez, and Martinez*

63.     Plaintiff hereby incorporates all other paragraphs of this Amended Complaint as if fully set forth herein.

64.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as a law enforcement officer at all times relevant to the allegations in this Amended Complaint.

---

[5] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

65.     Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

66.     Plaintiff was engaged in protected speech and petitioning activity.

67.     Plaintiff's speech and petitioning activity was on a matter of public concern and did not violate any law.

68.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her free speech and petitioning rights.

69.     Defendants' conduct chilled Plaintiff from exercising her petitioning rights.

70.     Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech and petitioning activity.

71.     Plaintiff's speech and petitioning activity occurred at a public forum.

72.     Defendants responded to Plaintiff's protected speech and petitioning activity with retaliation.

73.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her free speech and petitioning rights.

74.     Defendants sought to punish Plaintiff for exercising her free speech and petitioning rights, to silence her future speech and petitioning, to stop her from continuing to speak and petition, and to restrict her freedom of expression, along with the future speech, petitioning, and expression of others.

75.     Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in protected free speech activity.

76.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

77.     Defendants' action and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### First Amendment Violation — Freedom of Speech and Association
*Against All Defendants*

78.     Plaintiff hereby incorporates all other paragraphs of this Amended Complaint as if fully set forth herein.

79.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Amended Complaint.

80.     Defendants are "persons" under 42 U.S.C. § 1983.

81.     Plaintiff was engaged in First Amendment-protected expression by speaking at a public meeting and association by being associated with individuals who were viewed as having anti-law enforcement viewpoints.

82.     The actions of Defendants can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

83.     Plaintiff's expression and association was on a matter of public concern and did not violate any law.

84.     Plaintiff's expression and association occurred at a designated and/or limited public forum.

85.     Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiff's expression and association.

86.     Defendants' actions were not a reasonable time, place, and manner restriction on speech and association.

87.     At the time when Defendants stopped Plaintiff from speaking and expressing herself, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to express herself and speak freely and associate freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

88.     Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

89.     As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

90.     Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after his arrest, and other compensatory and special damages.

91.     Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Violation — Right to Petition**
*Against All Defendants*

92.    Plaintiff hereby incorporates all other paragraphs of this Amended Complaint as if fully set forth herein.

93.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Amended Complaint.

94.    Defendants are "persons" under 42 U.S.C. § 1983.

95.    Plaintiff was engaged in protected petitioning activity.

96.    Plaintiff's petitioning activity was on a matter of public concern and did not violate any law.

97.    Defendants' conduct would chill a person of ordinary firmness from exercising his or her petitioning rights.

98.    Defendants' conduct chilled Plaintiff from exercising her petitioning rights.

99.    Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's petitioning activity.

100.    Plaintiff's petitioning activity occurred at a designated and/or limited public forum.

101.    Defendants imposed a prior restraint on Plaintiff's petitioning activity by banning her.

102.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

103.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

104.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after his arrest, and other compensatory and special damages.

105.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America

### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### First Amendment Violation — Retaliation
*Against All Defendants*

106.    Plaintiff hereby incorporates all other paragraphs of this Amended Complaint as if fully set forth herein.

107.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Amended Complaint.

108.    Defendants are "persons" under 42 U.S.C. § 1983.

109.    Plaintiff was engaged in First Amendment-protected expression by speaking, petitioning, and associating at a public meeting.

110.    Plaintiff's expression was on a matter of public concern and did not violate any law.

111.    Plaintiff's expression occurred at a designated and/or limited public forum.

112.    Defendants jointly and on their own accord responded to Plaintiff's First Amendment protected activity with retaliation.

113.    Defendants' actions against Plaintiff were a content- and/or viewpoint-based restriction on speech.

114.    Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

115.    Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment rights.

116.    At the time when Defendants retaliated against Plaintiff for exercising her First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

117.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

118.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

119.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

120.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.  All appropriate relief at law and equity;

b.  Declaratory relief;

c.  Injunctive relief, including but not limited to:

    1.  An order that requires Defendants to allow Ms. Benson to attend future CAB meetings.

d.  Actual economic damages as established at trial;

e.  Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

f.  Punitive damages for all claims as allowed by law in an amount to be determined at trial;

g.  Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

    1.  Issuance of a formal written apology from each Defendant to Plaintiff;

2. The imposition of policy changes designed to avoid future similar misconduct by Defendants;

3. Mandatory training designed to avoid future similar misconduct by Defendants;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorney's fees and costs; and

j. Such further relief as justice requires.

## REQUEST FOR TRIAL BY JURY

Plaintiff demands a jury trial on all issues so triable.

Dated this 19th day of January 2024.

NEWMAN | MCNULTY

*/s/ Andy McNulty*
Andy McNulty
Mari Newman
1490 N. Lafayette Street
Suite 304
Denver, Colorado 80218
(720) 850-5770
andy@newman-mcnulty.com
mari@newman-mcnulty.com

COUNSEL FOR PLAINTIFF